Good morning. May it please the Court. My name is Tom Murphy. I represent the appellant Chan Desaigoudar. Desaigoudar? Desaigoudar. This appeal presents a fairly discreet issue, and that is whether prejudgment interest was properly awarded as part of a restitutionary award. It was prejudgment interest on a disgorgement amount where there was no evidence in the record that the defendant had access to or use of the disgorgement amount over the time for which the interest was being assessed. And, in fact, the interest was that he did not have access to the proceeds realized from the insider trading sale, which were held in a 401k account from 1994 through the year 2000 by his employer, California Micro Devices, which denied access to those funds. Do we review this under an abuse of discretion standard? That's correct, Your Honor. The standard is abuse of discretion, however, where the court lacks the power to order disgorgement only up to the approximate amount of the unjust enrichment realized by or received by the defendant. And in this instance, in the unique facts of this case, the amount to be disgorged was held the entire time in a 401k account. The interest to which Mr. Desaigoudar has denied access, the interest award was intended to represent restitution and is of the time value of the disgorgement amount over a lengthy period of time, from 1994 until the time of trial. In other words, what prejudgment interest is meant to represent is the value of the use of the avoided loss proceeds. And in this case, there was no evidence that Mr. Desaigoudar had the use of those proceeds from the period 1994 until 2000. In fact, the evidence was to the contrary, that he could not access that account because of the unilateral actions of California Micro Devices in denying him access. Therefore, since he did not have the use of the of those funds during that period, he did not, there was nothing, the court should not have ordered him to effectively return. Is that the test or is it the test that the victims didn't have the use of it? No. It's not a compensatory award. It is meant to deprive the wrongdoer of the ill-gotten gains. Mr. Desaigoudar has paid the principal amount of the disgorgement order, which is the amount of the $573,000 in avoided loss proceeds, which was he paid that as part of the criminal restitution award. Separately, under different statutory empowerment, he was assessed a penalty of $573,000 as well, and I believe that the court had a discretion to impose as a penalty, not as a disgorgement, up to three times that amount. But the basic argument here is that since Mr. Desaigoudar never received the use of those funds during the entire period that he's being assessed, and since the interest is meant to represent the value of the use of those proceeds, the court acted beyond its power in requiring him to effectively relinquish what he never actually enjoyed, which was the value of the use of the avoided loss proceeds from 1994 through the year 2001. I wanted to emphasize that point. I think that the remainder of our arguments are set forth in the brief. I think that that's the pivotal point that needs to be made, and the Court has no questions. I would like to reserve the balance of my time. Roberts. Roberts. We've got plenty of time for argument. Let's hear it from the other side, and you can step back up if you wish. Thank you, counsel. Ms. Broderick. May it please the Court. My name is Catherine Broderick, and I represent the Securities Exchange Commission in this matter. The mic is a little closer to you. Thank you. The purpose of disgorgement is to prevent unjust enrichment, and prejudgment interest effectuates that purpose. It makes violation of the securities laws unprofitable by depriving the wrongdoer of the benefit of what is, in effect, an interest-free loan. There would be little deterrent effect if an insider trader merely had to return his insider trading profits. Without prejudgment interest, he would simply be returned to his status quo before the violation. And the Commission's view, what, stated concisely, is the proper legal measure for an award of prejudgment disgorgement interest? Prejudgment, an award of a determination to award prejudgment interest does not depend on what use the money is put to, but is calculated on the basis of a standard fixed rate such as the IRS rate for underpayment of taxes or the Treasury bill rate, which was used here. I'm not talking necessarily about the method by which it's computed, but the argument we've heard from counsel is that his client did not and could not have personally profited, and the standard for, I'm inferring from his argument that he's saying that the standard for an award of prejudgment interest is cabined, limited to just that. Is that the Commission's view? No. The fact that the proceeds of desegregated fraud were subject to investment risk and the value of this account fell does not relieve him of paying prejudgment interest, because there's no exception for a defendant who makes a bad investment decision and loses money. In fact, if a defendant has spent all the money, he is still liable for prejudgment interest. Any other rule would lead to the anomalous result that prejudgment interest could be awarded only if there the defendant actually earned a return. And conversely, if the fraudulent proceeds produce a gain rather than a loss, the Commission is not entitled to the gain. There's case law that precludes the Commission from obtaining any income a defendant earns under his illicit proceeds. In SEC v. Manor Nursing Center, which de Segador relies upon, it was not a request for prejudgment interest that the Court denied, but rather a request for the income that the defendant earned on his illicit proceeds. Prejudgment interest was, in fact, ordered in Manor Nursing. And also in SEC v. Rubin and SEC v. Sargent, which de Segador also cites, too, the were held vicariously liable for their TIPIs, insider trading profits. The tippers there did not trade or profit from the TIPIs trading. Here, in contrast, de Segador did trade, and he did profit from avoided losses. The 401k account was in his name, and it was for his benefit. The district court acted well within its discretion in awarding prejudgment interest. There may be times when a court may, in the exercise of its discretion, decide that an award of prejudgment interest would be inequitable, but that is not the case here. That would be in a case where a court freezes all of a defendant's assets. There is no need for any adjustment to the prejudgment interest award here.  Thank you for your argument. Rebuttal, counsel? Just very briefly, I think that we agree that the purpose of prejudgment interest, as well as disgorgement in the first place, is to prevent unjust enrichment. In the ordinary case where a defendant has obtained the proceeds and kept them and been able to use them, that makes sense, because they've realized or they've had the time value of the money over the period of time for which interest is assessed. And that's not the case here, because Mr. DeSeguidor did not have access to or the use of the funds in the 401k account from 1994 through 2001. With respect to the contention that the account was held for his benefit, on this record, I don't think that that can be said with certainty. California Micro Devices froze the account for its own purposes. It held the account perhaps for its own benefit. There's no evidence that the 401k, during that period of time, that the money in the 401k would ever accrue to Mr. DeSeguidor at the end of the day. Didn't the government here seek something like $11 million? I'm sorry, I didn't. Didn't the government seek something like $11 million from your client? That's right. The disgorgement theory. And that was denied by the court. Yeah, I think, as I recall, and I could be wrong on this, I think it was sought on the basis of as compensation rather than disgorgement. In the pre-judgment interest of the equivalent of the loss of what, about 572, 573,000? That's what the court reduced the government's claim to? Yes. 573,000 was assessed as a penalty. Separately, 573,000 was assessed as disgorgement. And in the court's order, the court stated that the pre-judgment interest was being calculated on the disgorgement side of it and that the pre-judgment interest was intended as a restitutionary award. In other words, to cause Mr. DeSeguidor to give up the ill-gotten gains, which acknowledgedly included the 573 avoided loss proceeds. But our contention here is that he never received the time value of the 573,000 for the period 1994 through 2000, for which the pre-judgment interest, again, a surrogate. But now you don't challenge the civil penalty here, which is over a million dollars. No. We're only challenging the restitutionary award of pre-judgment interest on the 573,000. Is your client able to pay these fines? I'm sorry? Is your client able to pay these fines? I believe so. I believe that they've been deposited with the court. I'm not certain about the 300,000. I believe it was real. I'm not sure I should make representation of that because I'm not – I don't have the personal knowledge with regard to the 300,000. But I believe that most, if not all, of the amount awarded with – under the court's order was – has been deposited with the court. Perhaps the SEC could answer that. I'm guilty to the count of … Correct. There was a plea agreement. … of inside training, and the other counts were dismissed? I don't know if in this enforcement action – I don't know the exact terms of the plea agreement other than it included a plea to the insider trading charge. Well, okay. Okay. Okay. Thank you. Thank you for your argument. Thank both sides for their argument. The case that's argued will be submitted for decision, and we'll turn to the last case on the calendar for this morning and the week, which is the exchange commission again against Michael Seilfer. Good morning.
judges: Lay , B. Fletcher, Hawkins